COMEAUX v. CANULETTE SHIPBUILD-ING CO.

(January 21, 1929. Opinion and Decree.)

W. J. & H. W. Waguespack, of New Orleans, attorneys for plaintiff, appellant.

Monroe and Lemann, and Nicholas Callan, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. Plaintiff, widow of James Hill, sues for damages for the alleged negligent killing of her husband. The case was tried by a jury and a verdict and judgment rendered in favor of defendant. Plaintiff has appealed.

James Hill was killed August 27, 1925. He was standing on some wooden pilings adjacent to the bridge over the Industrial Canal, at a point where the canal empties into Lake Pontchartrain, in the Parish of Orleans. A tugboat, at that time owned by defendant, with a tow of five empty barges entered the Canal from the lake, and for some reason, the last barge struck the piling where defendant was standing, the jar throwing him off his feet, causing him to fall between the barge and the piling, where he was crushed and otherwise injured about the body, and ultimately precipitated into the lake, with the result that he died shortly after being rescued.

The charges of negligence are that the barges were improperly bridled or fastened, and that the tug was unskillfully navigated.

The tug and barges were en route from

Slidell, Louisiana, to their destination, somewhere on the Mississippi River. Their course lay across Lake Pontchartrain and through the Industrial Canal. When the tow was first made up, allowance was made for slack, or play, between the barges of about six feet, this allowance being necessary to accommodate the tow to the tortuous meandering of certain bayous through which it proceeded before entering Lake Pontchartrain. When in the lake, the ropes, or bridles, were shortened to two feet, and as thus attached the tug and tow approached the entrance to the canal.

The record fails to establish any fault in this arrangement which seems to us under the evidence to have been a proper one.

Leo Innerarity, the captain of the tug in charge of the navigation of the tug and tow, at the time of the accident was a young man who had progressed from the humble station of deckhand. He is given a good reputation for seamanship by other captains and masters of similar craft. He testifies that the accident was unavoidable because of the tendency of barges in tow to whip against the bank in entering a canal of the width of the Industrial Canal and that the piling on which the plaintiff was standing was placed there because of the recognition of that fact, the purpose being to have it serve as a bumper or buffer to protect the supports and approaches to the bridge. Captain Innerarity also testified that, at the time, he undertook to enter the canal there was a stiff west wind blowing that he directed his course "up the wind" with the intention of minimizing the whipping tendency of the barges. This maneuver, when submitted to other expert navigators, whose testimony appears in the record, was approved as proper under the circumstances.

There is no testimony in the record to the effect that the tug was unskillfully or improperly navigated.

But it is said that as the tug entered the canal the Captain left his post of duty in the pilot house and with one of the members of the crew stood on deck, being attracted thereto by the presence of two women on the piling, who were fishing, with stockingless legs hanging over the water. The Captain is charged with flirting with the women and abandoning the navigation of the tug. In support of this claim the two women referred to testify that they were seated on the piling fishing with bare legs dangling, that as the tug and tow entered the canal two men, one of whom had just emerged from the pilot house, commenced waving to them and one of the women testified, that believing that the men were endeavoring to flirt with them she waved back, but neither one of the two ladies testified that the Captain was one of the two men. The nearest that either came to this statement is to say that he looked like one of them. No other witness involved the Captain in the alleged flirtation. The bridge tender, employed by the Dock Board, who have charge of the administration of the Industrial Canal denied that the Captain left the pilot house at all, because, he says that he had been talking to him through the open window of the pilot house as he was going through the entrance of the Canal and nearing the bridge, which had been opened to admit of his passage.

The Captain denied the statement, and every other member of the crew denies it, one witness says that the Captain's brother was one of the two men referred to.

The charges of negligence imputed to defendants' servants have not been estab-

lished. This being true there is no necessity of discussing the negligence of the deceased in voluntarily assuming a position of peril.

For the reasons assigned the judgment appealed from is affirmed.